## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

FIDEL BARRAZA,                            )
                                          )
                Plaintiff,       )
                                          )
v.                                        )      Case No. 21-CV-0282-CVE-CDL
                                          )
STATE FARM FIRE AND CASUALTY              )
COMPANY,                                  )
                                          )
                Defendant.       )

## OPINION AND ORDER

Before the Court are defendant's motion for summary judgment (Dkt. # 41), plaintiff's response (Dkt. # 43), and defendant's reply (Dkt # 55). This case arises from an insurance claim dispute regarding the extent of and coverage for wind and hail damage to plaintiff's roof. Dkt. # 2-1. On May 25, 2021, plaintiff Fidel Barraza filed a petition in the Tulsa County District Court, Oklahoma (Dkt. # 2-1) against defendant State Farm Fire and Casualty Company (State Farm) alleging breach of contract and breach of the covenant of good faith and fair dealing (bad faith). Id. at 2-5. Plaintiff seeks actual damages based on defendant's alleged breaches, and punitive damages for bad faith. Id. at 4-5. On July 13, 2021, defendant removed this case to federal court because the action is "between citizens of different states" and "the amount in controversy exceeds the sum or value of $75,000." Dkt. # 2, at 2. Defendant State Farm now moves, pursuant to Fed. R. Civ. P. 56, for summary judgment on plaintiff's breach of contract and bad faith claims, as well as the issue of punitive damages. Dkt. # 41. Defendant argues that plaintiff's breach of contract claim is time-barred by the express terms of the insurance policy, "which required him to file this lawsuit within a year of the date of loss." Id. at 6. Further, defendant argues that plaintiff's bad faith claim fails

because State Farm's handling of plaintiff's property loss claim was "wholly proper, with State Farm taking all reasonable steps, conducting an appropriate investigation, and acting in a timely and fair manner toward [p]laintiff." Id. Plaintiff responds that the insurance policy is "ambiguous as to whether the one-year or a two-year limitations period applies," or, in the alternate, that State Farm "waived the one-year limitation" through its conduct by negotiating with plaintiff up to and beyond the one year deadline. Dkt. # 43, at 5. In addition, plaintiff argues that State Farm "mishandled" the insurance claim by "conducting an inadequate investigation, misrepresenting the extent of the damage, misrepresenting coverage under the policy, demanding extracontractual 'information' from its insured, and failing to conduct a repairability analysis." Id. at 5.

## I.

The following facts are not in dispute: Plaintiff claims his property was damaged by a storm on May 26, 2019. Dkt. # 41, at 10; Dkt. # 43, at 5. At the time, plaintiff's property was insured under State Farm policy number 36-CA-N776-5. Dkt. # 41, at 9; Dkt. # 43, at 5. Plaintiff's policy covered "accidental direct physical loss to the property . . . unless the loss is excluded or limited in Section I - Losses Not Insured or otherwise excluded for limited in th[e] policy." Dkt. # 41, at 9; Dkt # 43, at 5. The policy included the following one-year suit limitation provision: "**Suit Against Us.** No action will be brought against *us* unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage. . . ." Dkt. # 41, at 10; Dkt. # 43, at 6; Dkt. # 41-1, at 33. The policy also contained a provision providing replacement cost coverage for two years from the date of loss:

> **Replacement Cost Loss Settlement - Similar Construction.** a. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises . . . subject to the following:

. . .

(3)  to receive any additional payments on a replacement cost basis, ***you*** must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss . . . .

Dkt. # 43, at 9-10; Dkt. #55, at 3; Dkt. # 41-1, at 29.  In addition, the policy also outlines the insured's "[d]uties [a]fter [l]oss," which include "cooperat[ing] with State Farm in the investigation of the claim" and "provid[ing] State Farm with any requested records and documents."  Dkt. # 41, at 10; Dkt. # 43, at 5.

Plaintiff reported the loss from the tornado and/or hailstorm and/or windstorm to State Farm on May 27, 2019.  Dkt. # 41, at 10; Dkt. # 43, at 5.  Plaintiff's property was inspected by State Farm claim specialist Ernest Chavez on June 17, 2019.  Dkt. # 41, at 10; Dkt. # 43, at 5.  Chavez "identified repairable exterior wind damage to the roof, stucco, vinyl window glazing bead, fence, and corrugated roof panels on a playhouse, and some interior damage." Dkt. # 41, at 11. Dkt. # 43, at 6.  Plaintiff was present during Chavez's inspection, which "took an hour to an hour and a half." Dkt. # 41, at 11; Dkt. # 43, at 5.  Plaintiff acknowledges that Chavez "inspected everything that [plaintiff] asked [] Chavez to inspect. Dkt. # 41, at 11; Dkt. # 43, at 5.  Chavez then "prepared an estimate itemizing the repairable damage, totaling $6,764.10. Dkt. # 41, at 11; Dkt. # 43, at 6; Dkt. # 41-6.  On the same date as the inspection, State Farm issued a payment of $3,554.52 to plaintiff, the actual cash value (ACV) of repairs after depreciation and deductible. Dkt. # 41, at 11-12; Dkt. # 43, at 6.

The estimate materials included an "[e]xplanation of [b]uilding [r]eplacement [c]ost [b]enefits" letter that explained:

The estimate to repair or replace your damaged property is $6,764.10. The enclosed claim payment to you of $3,544.53 is for the actual cash value of the damaged property at the time of loss, less any deductible that may apply. We determined the actual cash value by deducting depreciation from the estimated repair or replacement cost. Our estimate details the depreciation applied to your loss. Based on our estimate, the additional amount available to you for replacement cost benefits (recoverable depreciation) is $347.12.

Dkt. # 41-6, at 4; Dkt. # 43-3, at 12. The letter also stated that plaintiff had "two years [from] the date of loss" to "[c]omplete the actual repair or replacement of the damaged part of the property." Dkt. # 43-3, at 12. It explained that, "[i]f [the insured] cannot have the repairs completed for the repair/replacement cost estimated," he should "contact [his] claim specialist prior to beginning repairs." Id. Finally, the letter also stated that "[a]ll policy provisions apply to [plaintiff's] claim." Id. In addition, the estimate also stated in bold that "ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS, AND LIMITS OF YOUR POLICY." Dkt. # 41-6, at 3.

Two days later, on June 19, 2019, plaintiff advised defendant that he "disagreed with State Farm's estimate," as "a contractor told him there was additional damage to the property." Dkt. # 41, at 12; Dkt. # 43, at 6. During the call, plaintiff also reported there was more damage from the storm, including cracks in the walls and windows and water was "still coming into [the] house from roof leaking." Dkt. # 41-2, at 9. In that conversation, "State Farm asked [p]laintiff to submit photos of the alleged additional damage, as well as the contractor's estimate, so State Farm could consider whether a second inspection was warranted." Dkt. # 41, at 12; Dkt. # 43, at 6. Plaintiff "did not contact State Farm again for another nine months." Dkt. # 41, at 12; Dkt. # 43, at 6.

On March 31, 2020, State Farm received an estimate from plaintiff's roofer, Grant Golliver of Messick Roofing & Construction, Inc., for $14,209.72. Dkt. # 41, at 12; Dkt. # 43, at 6. On April 6, 2020, State Farm claim specialist Jeffery Celestine spoke with Golliver by telephone. Dkt. # 41,

at 12; Dkt. # 43, at 7; Dkt. # 41-2, at 7.   According to State Farm's claim file, Golliver informed Celestine that he "was just doing what [plaintiff] wanted and provided an estimate on [the] claim to meet with and [sic] adjuster."   Dkt. # 41-2, at 7.   State Farm's claim file also reports that Golliver told Celestine that Golliver "did not see any additional damages," but also that he "just looked around" and "did not go up on [the] roof."   Id.   Celestine told Golliver that he would discuss this with plaintiff, and that plaintiff "may want [Golliver] to climb the roof to determine if [there are] any additional damages."   Id.

The claim file then notes that Celestine called plaintiff and informed him of the conversation with Golliver.   Id.   Celestine told plaintiff that Golliver "did not assess the roof [he] only look[ed] at it and provided an estimate," and that he "would need a [contractor] to provide [State Farm with] an assessment on [the] differences" between the initial estimate and the contractor's estimate.   Id.   The same entry in the claim file also states that Celestine told plaintiff that his claim "is for wind damage only and if [he is now] indicating hail damage [it] would be a separate claim."   Id.   The claim file notes that plaintiff "understood" and "woul[]d check to see if [Golliver] would look at [the] roof."   Id.

On May 18, 2020, plaintiff called State Farm and said that Golliver "had temporarily repaired the roof, but advised [plaintiff] that he needed a new roof."   Dkt. # 41, at 12; Dkt. # 41-2, at 6-7.   State Farm's claim record notes that Celestine informed plaintiff that Golliver had previously told State Farm that he had not found "any additional damages," and this update from plaintiff was "something different."   Dkt. # 41-2, at 6-7.   Plaintiff asked Celestine to call Golliver to discuss the matter, and the claim record notes that Celestine left a message for Golliver asking him to return the call to discuss.   Id.

Celestine next called Golliver on May 27, 2020, one day after the policy's one-year suit limitation period lapsed.  Dkt. # 41-2, at 6.  The claim file states that Golliver told Celestine that plaintiff "had a few missing shingles on [his] roof which [Golliver] repaired" and that the roof "had old hail damage."  Id. at 6.  The claim file also notes that Golliver told Celestine that "the [roof][1] will need to be replaced due to mechanical issues on the roof with granules starting to come off the shingles" and that Golliver had told plaintiff "that insurance would not cover for mechanical issues on the roof."  Id.  The claim file states that then Celestine called plaintiff and told him about the conversation with Golliver, including that Golliver indicated to Celestine that there was "no wind or hail damage."  Id.  Celestine also told plaintiff that the "claim filed was for wind" and he "would need to file another claim for hail."  Id.  Celestine went on to inform plaintiff that State Farm's inspection found "wind damage and only hail to the vents," to which plaintiff replied that Golliver told him "the roof [was] beat up with hail."  Id.  Plaintiff asked to speak to a supervisor and the call ended.  Id.

The following day, May 28, 2020, State Farm supervisor Shannon Deal called plaintiff to discuss the claim.  Id.  The claim file notes that Deal confirmed to plaintiff the results of the initial inspection, including "wind damage to some shingles and hail damage to the soft metals," and that Golliver "found the same damage and mentioned granular loss not caused by wind or hail."  Id.

---

[1]    The Court notes that the file reads "the will need to be replaced . . . ," with the subject of what will need to be replaced missing from the sentence.  Dkt. # 41-2, at 6.  Based on the context, the Court understands the missing word to be "roof," such that the file notes that Golliver informed Celestine that plaintiff's roof will need to be replaced due to the mechanical issues on the roof.  This interpretation is also consistent with the standard for summary judgment in which the Court construes the record in the light most favorable to the party opposing summary judgment, Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998), because it supports plaintiff's position that Golliver determined a new roof was required.

Plaintiff responded that that was "not what [Golliver] told him." Id. Dean then "explained the second inspection process and that there would need to be additional covered damages found (by wind/hail) before [State Farm] would conduct another inspection with [plaintiff's] contractor." Id. The claim file notes that plaintiff "understood and [would] follow up with [Golliver] and/or have another contractor take a look at his roof." Id.

On July 13, 2020, State Farm received an estimate from King Construction Roofing, LLC, for $21,320. Dkt. # 41, at 13; Dkt. # 43, at 5. That day, Celestine contacted Francisco Reyes of King Construction to discuss the contractor's assessment, and Reyes informed Celestine that he "found hail damage on all slopes of 10 hits or more." Dkt. # 41-2, at 5. Celestine "explained that State Farm needed an itemized estimate so that the scope and pricing could be compared to State Farm's estimate." Dkt. # 41, at 13; Dkt. # 43, at 8. Over the next two months, Celestine followed up to obtain the itemized estimate, and the claim file notes that plaintiff also followed up to see if State Farm had received the requested breakdown during that time. Dkt. # 41, at 13; Dkt. # 43, at 8; Dkt. # 41-2, at 4-5.

State Farm never received an itemized estimate from Reyes but, on October 21, 2020, State Farm claim specialists Khalid Fouda and Jay Tollett conducted a second inspection anyway. Dkt. # 41, at 13; Dkt. # 43, at 9. A roofer with King Construction was present during part of the inspection. Dkt. # 41, at 14; Dkt. # 43, at 9. During the inspection, Fouda "identified some additional interior water damage to a ceiling, a wall, and some flooring" which he included in the revised estimate. Dkt. # 41, at 14; Dkt. # 43, at 9. He also revised the estimate to include more area of stucco, but other than that, "no additional exterior damage was noted." Dkt. # 41, at 14; Dkt. # 43, at 9. With these additional inclusions, the final estimate "included a replacement cost value of

$10,678." Dkt. # 41, at 14; Dkt. # 43, at 5.  "After depreciation and deductible, State Farm made an additional payment for actual cash value in the amount of $3,679.52 on October 22, 2020, bringing the total amount paid to [p]laintiff to $7,224.05."  Dkt. # 41, at 14; Dkt. # 43, at 5.

Plaintiff "testified that State Farm did not represent to him at any point in time that State Farm would pay the full replacement cost of the property's roof."  Dkt. # 41, at 14; Dkt. # 43, at 5. Plaintiff's complaint was filed on May 25, 2021, more than one year after the date of loss.  Dkt. # 41, at 14; Dkt. # 43, at 5.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  "[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery[,]" Fed. R. Civ. P. 56(b), including before any discovery has been conducted.  "Movants for summary judgment bear the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." Silverstein v. Federal Bureau of Prisons, 559 F. App'x 739, 752 (10th Cir. 2014); see also Adler v. Wal–Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  In essence,

the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.   In its review, the Court construes the record in the light most favorable to the party opposing summary judgment.   Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Defendant State Farm moves for summary judgment on the following grounds:

*a.*      *Breach of Contract*

The policy contains a one-year suit limitation provision, which provides, in relevant part, that "[a]ny action by any party must be started within one year after the date of loss or damage."   Dkt. # 41-1, at 33.   Such provisions are permitted under Oklahoma law.   See OKLA. STAT. tit. 36, § 3617; Wagnon v. State Farm Fire & Cas. Co., 951 P.2d 641, 644 (Okla. 1997) (finding that, under § 3617, property insurance "can be limited to a one-year period in which to file an action").   In addition, "courts interpreting Oklahoma law have consistently concluded that similar limitation provisions are unambiguous and enforceable as to breach of contract claims."   Parrish v. Farmers Ins. Co., Inc., No. 21-CV-00280-GKF-SH, 2022 WL 3139750, at *7 (N.D. Okla. Aug. 5, 2022) (citing cases). Defendant argues that plaintiff's breach of contract claim is time-barred by the policy's suit limitation provision because the action was filed on May 25, 2021, nearly two years after the May 26, 2019 date of loss.   Dkt. # 41, at 15.   Plaintiff contends that the policy is ambiguous because the one-year limitation "conflicts" with a two-year provision in the policy that concerns replacement costs, or, alternatively, that defendant waived the one-year time limit provision.   Dkt. # 43, at 15, 18.

1)      Ambiguity of the policy's one-year suit limitation provision

9

Plaintiff contends that the policy's one-year suit limitation provision conflicts with a separate "replacement cost" provision in the policy, which states that the insured has two years from the date of loss to "complete the actual repair or replacement of the damaged part of the property" to "receive any additional payments on a replacement cost basis." Dkt. # 43, at 17. Plaintiff argues that "[i]t makes no sense to say [plaintiff's] claim includes coverage he may never enforce," and, therefore, the two provisions conflict, which "renders the policy ambiguous." Id. Defendant asserts that the provisions "apply to the policy independently" and the replacement cost provision does not "purport to limit an insured's time to file suit." Dkt. # 55, at 6.

This is a diversity case requiring the Court to construe disputed terms of an insurance policy as required by state law. See Zurich American Ins. Co. v. O'Hara Reg'l Ctr. for Rehabilitation, 529 F.3d 916, 920 (10th Cir. 2008); Houston General Ins. Co. v. American Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997). Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True Plastering Co. v. U.S. Fidelity & Guar. Co., 912 P.2d 861,

10

869 (Okla. 1996).  If an insurance contract contains an ambiguous term, the Court may refer to extrinsic evidence to interpret the insurance policy.  <u>Gable, Simmons & Co. v. Kerr-McGee Corp.</u>, 175 F.3d 762, 767 (10th Cir. 1999) (citing <u>Pierce Couch Hendrickson Baysinger & Green v. Freede</u>, 936 P.2d 906, 912 (Okla. 1997)).

Plaintiff argues that the Oklahoma courts apply the doctrine of reasonable expectations when construing ambiguous or technical language in an insurance policy.  <u>See</u> <u>Haworth v. Jantzen</u>, 172 P.3d 193, 196 (Okla. 2006) ("In construing an ambiguity or uncertainty against the insurer and in favor of the insured, Oklahoma looks to the objectively reasonable expectations of the insured to fashion a remedy.").  The doctrine of reasonable expectations is an interpretative tool used to discern the intent of the parties "when the policy language is ambiguous or when an exclusion is 'masked by technical or obscure language' or 'hidden in a policy's provisions.'" <u>American Economy Ins. Co. v. Bogdahn</u>, 89 P.3d 1051, 1054 (Okla. 2004) (quoting <u>Max True Plastering Co</u>, 912 P.2d at 870).  Whether policy language is ambiguous is a question of law for the court to decide, and the "test for ambiguity is whether the language 'is susceptible to two interpretations on its face . . . from the standpoint of a reasonably prudent lay person, not from that of a lawyer.'" <u>Edens v. The Netherlands Ins. Co.</u>, 834 F.3d 1116, 1121 (10th Cir. 2016) (quoting <u>Cranfill v. Aetna Life Ins. Co.</u>, 49 P.3d 703, 706 (Okla. 2002)).  However, courts must not "indulge in forced or constrained interpretations to create and then to construe ambiguities in insurance contracts." <u>Broom v. Wilson Paving & Excavating, Inc.</u>, 356 P.3d 617, 628 (Okla. 2015).

First, the Court accepts the plain, ordinary language of the provisions and finds that each provision cannot be reasonably interpreted to have more than one meaning.  The one-year suit limitation provision clearly and unambiguously required plaintiff to bring this breach of contract

claim within one year from the date of loss.  The separate replacement cost provision governed the time period that plaintiff could have recouped the depreciation costs of repairs actually made to the property based on the damage for which State Farm indemnified him.  There are no reasonable alterative interpretations of these provisions.

Further, the Court finds that the two-year replacement cost provision and the one-year suit limitation provision are independent provisions within the policy that do not conflict with each other. The replacement cost provision did not limit plaintiff's time to sue for breach of contract, and the suit limitation provision did not affect plaintiff's replacement cost coverage.  Plaintiff contends that defendant "considered this two-year limitation to apply to [p]laintiff's claim" because the damage estimate referred to it.  Dkt. # 43, at 17.  Of course plaintiff is correct that the two-year limitation did apply to the replacement cost coverage of his claim; however, that provision had no bearing on the applicability of the separate one-year suit limitation.  This is clear from the same damage estimate, which stated that "[a]ll policy provisions apply to your claim," and "**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS, AND LIMITS OF YOUR POLICY**." Dkt. # 41-6, at 3, 4.  In addition, plaintiff's breach of contract action, challenging defendant's valuation of his claim, has nothing to do with his replacement cost coverage, which would reimburse him for the depreciation cost of the settled claim had he actually made the repairs.  Therefore, these provisions do not conflict, but exist independently of each other.  As the provisions do not conflict, the policy's one-year suit limitation term is not ambiguous.

"When an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctively reveals its stated purpose."  Haworth v. Jantzen, 172 P.3d 193, 196 (Okla. 2006).  The one-year suit limitation provision does exactly that.  It clearly and unambiguously limits

defendant's liability under the policy by requiring suits like plaintiff's breach of contract claim to be filed within one year from the date of loss.  The provision is clear as written, and, further, it in no way conflicts with the replacement cost provision; therefore, it is unambiguous and plaintiff's first argument fails.

        2)       Waiver of the policy's one-year suit limitation provision.

Plaintiff also argues that defendant, through its conduct, waived the one-year suit limitation in the policy.  Dkt. # 43, at 18.  Provisions like the one-year suit limitation provision in this case are "for the benefit of the insurer and therefore one which can be waived by it and which will be deemed to have been waived where it would be inequitable to permit it to be plead." Prudential Fire Ins. Co. v. Trave-Taylor Co., 152 P.2d 273, 275 (Okla. 1944).  In Prudential, the Oklahoma Supreme Court held that the insurer "waived the limitation provision when it did not deny liability within time to enable the plaintiff to institute the action within the limitation provision contained in the policy." Id.  There, the defendant insurer hired an adjustor and experts to determine the amount of loss suffered to plaintiff's property as a result of a fire, and that investigation period consumed the entire suit limitations period.  Id. at 274.  The insurer ultimately denied plaintiff's claim, but that decision was made and communicated to plaintiff after the suit limitations period had already expired.  Id. Later, in Agricultural Ins. Co. of Watertown, N. Y. v. Iglehart, 386 P.2d 145 (Okla. 1963), the Oklahoma Supreme Court held:

> In such a situation where defendant admitted liability to plaintiff, but never made payment to him on his claim, and there were intermittent negotiations for settlement of the claim, the defendant thereby waived the limitation provision of the policy. If defendant had intended to rely on the limitation provision, it should have paid plaintiff what it considered to be the reasonable value of plaintiff's loss and denied liability for anything in excess of that.

Id. at 146 (emphasis added). "Thus, it is clear that, to determine waiver, the court must focus on the insurer's conduct and whether it prohibited the insured from filing suit within the contractual limitation period." Parrish, 2022 WL 3139750, at *7 (citing Ins. Co. of N. Am. v. Bd. of Educ. of Indep. Sch. Dist. No. 12, 196 F.2d 901, 904 (10th Cir. 1952)).

The Court finds that State Farm's conduct in no way prohibited plaintiff from filing suit within the one-year suit limitation period, and defendant did not waive the provision. Plaintiff argues that State Farm waived the one-year suit provision as a matter of law under Iglehart because its communications with plaintiff did not explicitly "deny any further liability" beyond what it had already paid to him. Dkt. # 43, at 18-19. However, Iglehart, and Prudential as well, are inapposite to the facts of this case. Those cases concerned the insurers' conduct and untimeliness in ultimately accepting or denying the insureds' claims after the expiration of the suit limitation period. In this case, however, defendant State Farm accepted plaintiff's claim and paid it on June 17, 2019, more than eleven months before the expiration of the suit limitation period. Here, plaintiff contests the computation of the value of the claim, not the acceptance or denial of it. Unlike in Iglehart, defendant's lack of denial is irrelevant when it accepts plaintiff's claim, pays the value of the claim, and does not negotiate any further, as was the case here.

Plaintiff argues that defendant continued to negotiate with him leading up to and beyond the expiration of the one-year suit limitation period, thereby waiving the provision. Plaintiff is mistaken. State Farm accepted plaintiff's claim and issued payment on June 17, 2019, completing its handling of the claim. Plaintiff disagreed with defendant's calculation of the damages and hoped that State Farm would reconsider the claim. Defendant explained what was required, in accordance with plaintiff's "duties after loss" as outlined in the policy, before State Farm would consider a second

14

inspection.  Then, each time after receiving new information, defendant explained to plaintiff why the information provided did not justify a second inspection.  In all of the discussions plaintiff had with State Farm leading up to and beyond the expiration of the one-year suit limitation on May 26, 2020, defendant State Farm represented that it would require more and different information before it considered a second inspection.  These were not negotiations.  State Farm had already accepted plaintiff's claim and issued the payment within one month of the date of loss; these subsequent conversations were simply plaintiff trying to have State Farm re-estimate the claim.

Further, at no point in these discussions did defendant represent to plaintiff that State Farm would pay for the full replacement cost of his roof.  Nothing about defendant's conducted inhibited plaintiff's ability to file suit in a timely manner under the policy and the delay was due entirely to plaintiff's own inactions.  Plaintiff was not waiting for State Farm to determine its liability, as was the case for the plaintiffs in Prudential and Iglehart.  Instead, plaintiff knew exactly what State Farm determined its liability to be, because it completed its assessment and issued payment to him in that amount.  Plaintiff could have filed this suit within the one-year period, as required by his policy, without prejudice to his ability to request that State Farm reinspect his roof, but he opted not to do that.

In addition, the damages estimate provided to plaintiff explicitly stated that "**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF [PLAINTIFF'S] POLICY**," and the explanation of benefits provided with the estimate also explicitly stated that "[a]ll policy provisions apply to [plaintiff's] claim."  Dkt. #41-6, at 3, 4.  By including this language throughout the damage estimate, defendant's conduct should have put plaintiff on notice that it did not waive the one-year suit limitation provision.

Finally, plaintiff asserts that defendant waived the one-year suit provision by failing to comply with OKLA. STAT. TIT. 36, § 1250.7(E), which requires that an insurer not "continue or delay negotiations for settlement . . . for a length of time which causes the claimant's rights to be affected by a statute of limitations, or a policy or contract time limit, without giving the claimant written notice that the time limit is expiring and may affect the claimant's rights." Id. For the aforementioned reasons, defendant did not "continue or delay negotiations," and, therefore, the Court finds this part of the statute is inapplicable;[2] thus, whether such notice was adequately provided is immaterial.

None of the evidence offered by plaintiff raises a genuine issue of material fact as to whether defendant State Farm waived the one-year suit limitation through its conduct. Defendant did not do anything to prohibit plaintiff from filing suit within the one-year limitation period; instead, the delay was entirely attributable to plaintiff. Unlike Prudential and Iglehart, defendant State farm had accepted and paid plaintiff's claim; there were no negotiations after that time, other than plaintiff's request for a second inspection. Further, the payment and damage estimate materials that plaintiff received from State Farm stated that "[a]ll policy provisions apply to your claim," thereby explicitly not waiving the policy's provisions, including the one-year suit limitation provision. Plaintiff has failed to demonstrate that a genuine issue of material fact exists as to whether defendant's conduct prior to the expiration of the one-year limitation period constitutes waiver of said provision under

---

[2]     The Court notes that §§ 1250.7(A) and (C), which provide that the insurer must advise the insured claimant "of the acceptance or denial of the claim by the insurer" within sixty days of notice about the loss, and "complete investigation of a claim within sixty [] days" after notification of the loss, are applicable in this case. OKLA. STAT. tit. 36, §§ 1250.7(A), (C). Defendant complied with the statute when it notified plaintiff that it accepted his claim, investigated it via an inspection, and paid the full amount of the estimated loss, all within a month after the date of loss.

Oklahoma law.  Therefore, the Court grants defendant's motion for summary judgment as to plaintiff's breach of contract claim because it is barred by the policy's one-year suit limitation provision.

      *b.*    *Bad Faith*

     Defendant argues that plaintiffs' bad faith claim fails as a matter of law.  Dkt. # 41, at 21. Specifically, defendant argues that this case is about "a simple dispute as to the extent and value of damage to [p]laintiff's residence," and that plaintiff "cannot establish the elements of bad faith." Id. at 21-22.  Plaintiff argues that a jury could find that State Farm acted in bad faith because its investigation was "inadequate or a sham" or that it "otherwise failed to treat [plaintiff] fairly."  Dkt. # 43, at 24.

     The Oklahoma Supreme Court has held that "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought."  Christian v. Am. Home. Assurance Co., 577 P.2d 899, 904 (Okla. 1977).  "The core of a bad-faith claim 'is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy.'"  Flores v. Monumental Life Ins. Co., 620 F.3d 1248, 1255 (10th Cir. 2010) (quoting McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 587 (Okla. 1981)).  To succeed on a bad faith claim, plaintiffs "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of [plaintiff's] claim."  Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993); accord Shotts v. GEICO Gen. Ins. Co., 943 F.3d 1304, 1314 (10th Cir. 2019).  According to the Tenth Circuit, courts generally use a two-step analysis to determine whether a plaintiff has made a sufficient showing of bad faith.  Shotts,

943 F.3d at 1314-15.  The Court considers 1) "whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of the claim"; and 2) "if the court determines there is a legitimate dispute between the parties, . . . whether the plaintiff offered specific additional evidence to demonstrate bad faith." Id. at 1315.  "The additional evidence required for this showing" may include evidence that 1) "the insurer did not *actually* rely on th[e] legitimate [dispute] to deny coverage"; 2) the insurer "denied the claim for an illegitimate reason"; 3) the insurer "otherwise failed to treat the insured fairly"; and 4) "the insured performed an inadequate investigation of the claim." Id. (internal quotations and citations omitted) (emphasis and alterations in Shotts, 943 F.3d at 1315).

For step one, the Court finds that there exists a legitimate dispute between plaintiff and defendant regarding coverage and the total value of the claim.  Defendant State Farm sent an adjuster to inspect plaintiff's roof.  He assessed damage for which State Farm promptly issued payment. Plaintiff informed defendant that he disagreed with that estimate, and defendant informed him what documents would need to be provided before State Farm would consider a second inspection, as permitted under the policy.  Nine months later, plaintiff, through his contractor, provided State Farm with an estimate to replace plaintiff's roof.  According to plaintiff, his contractor concluded that plaintiff's roof was "beat up with hail" and necessitated complete replacement.  Dkt. # 43-3, at 5. State Farm reviewed the information provided and spoke with plaintiff's contractor, and, according the State Farm, that contractor agreed with defendant's assessment of the claim.  Id. at 5-6.  State Farm informed plaintiff of this and plaintiff then retained a different roofing contractor to provide another estimate and opinion that his roof required a complete repair.  State Farm reviewed the information provided by plaintiff's second contractor but could not determine if it contained any

wind or hail damage beyond what was covered in the initial estimated replacement cost that defendant had paid to plaintiff.  State Farm then sent additional adjusters to re-inspect plaintiff's roof.  They increased the estimate to account for damage to the interior of the property, but also affirmed that the "damage to the roof remain[ed] the same as [the] initial inspection."  Id. at 2.  Thus, there is a legitimate dispute as to the extent and valuation of damage to plaintiff's roof.

For step two, the Court finds that plaintiff has failed to offer sufficient evidence of defendant's bad faith.  Plaintiff presents no facts from which a reasonable jury could find that State Farm did not actually rely on the legitimate dispute to deny the claim; denied the claim for an illegitimate reason; treated plaintiffs unfairly; or performed an inadequate investigation.  The undisputed facts discussed in step one demonstrate that State Farm investigated the damage and processed the claim, then it reviewed plaintiff's supplemental information multiple times, and, even without receiving the necessary documentation, performed a second inspection.  These facts do not raise an inference of bad faith due to an inadequate investigation or any other reason.

To the extent plaintiff asserts that defendant's adjusters incorrectly assessed the repairability of the shingles, or that defendant provided him with inaccurate information about needing to file a separate claim for the alleged hail damage to the roof when it would in fact be part of the same claim, or otherwise misrepresented the cause of reported damage, such mistakes are not bad faith. Any such errors and their potential effect on State Farm's valuation of plaintiff's claim are legitimate questions of fact with respect to plaintiff's time-barred breach of contract claim.  On the other hand, plaintiff presents no direct evidence of defendant's intentional bad-faith conduct.

Finally, plaintiff cites this Court's previous opinion in Brown v. State Farm Fire & Cas. Co., No. 20-CV-0418-CVE-JFJ, 2022 WL 875648 (N.D. Okla. Mar. 23, 2022), as evidence to support

its bad faith claim.  In <u>Brown</u>, this Court denied summary judgment on a bad faith claim after finding that, "[b]ased on plaintiff's proffered evidence . . . a reasonable jury could conclude that [defendant] did not actually rely on the legitimate dispute to deny coverage, and denied plaintiffs coverage for an illegitimate reason."  <u>Id.</u> at *5.  In this case, however, plaintiff has not proffered any evidence to show that the issues which precluded summary judgment in <u>Brown</u> are also present in this case, nor to support any other basis for its bad faith claim.  Instead, the evidence proffered by plaintiff shows a dispute between the parties as to the scope and valuation of plaintiff's claim.

Plaintiff concedes that "[w]hile it is undisputed that [State Farm's adjuster] identified damage and prepared an estimate, the validity of that estimate, and whether the roof was repairable, . . . are disputed and at the heart of the lawsuit."  Dkt. # 43, at 2.  The undisputed material facts demonstrate that there is a legitimate dispute as to the extent and valuation of damage.  The facts do not, however, raise any evidence of intentional bad faith conduct.  Therefore, the Court grants defendant's motion for summary judgment as to plaintiff's bad faith claim.

   *a.* *Punitive Damages*

Under Oklahoma law, a jury may award punitive damages "[w]here the jury finds by clear and convincing evidence that . . . [a]n insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured[.]"  OKLA. STAT. tit. 23, § 9.1(B)(2).  Thus, a punitive damages claim is "dependent upon bad faith for its basis."  <u>Peters v. Am. Income Life Ins. Co.</u>, 77 P.3d 1090, 1099 n.9 (Okla. Civ. App. 2002).  Accordingly, plaintiff's claim for relief based on punitive damages fails as a matter of law, and the Court grants defendant's motion for summary judgment as to the issue of punitive damages.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Dkt. # 41) is **granted.**  A separate judgment will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's motion in limine (Dkt. # 32), and defendant's motions to exclude expert opinion testimony (Dkt. # 33), omnibus motion in limine (Dkt. # 35), motion in limine regarding punitive damages (Dkt. # 36), and motion in limine regarding repair estimates that utilize pricing that post-dates the date of loss (Dkt. # 39) are hereby **moot.**

**IT IS FURTHER ORDERED** that all pending scheduling order deadlines, including the February 6, 2023 pretrial conference and the February 21, 2023 jury trial, are **stricken**.

**DATED** this 23rd day of January, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE